KENT et al., Appellees,

v.

HUNTINGTON NATIONAL BANK, Appellant;
KeyBank National Association, Appellee.

[Cite as *Kent v. Huntington Natl. Bank* (2001), 145 Ohio App.3d 745.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1389.

Decided Sept. 6, 2001.

*Burman & Robinson* and *Robert N. Burman,* for Marcia E. and Lawrence Kent.

*Schottenstein, Zox & Dunn Co., L.P.A., John P. Gilligan* and *Kevin L. Murch,* for Huntington National Bank.

*Luper, Sheriff & Neidenthal* and *Jeffrey B. Sams,* for KeyBank National Association.

PEGGY BRYANT, Presiding Judge.

Defendant-appellant Huntington National Bank ("Huntington") appeals from a judgment of the Franklin County Court of Common Pleas overruling Huntington's motion for summary judgment and granting the cross-motion for summary judgment of defendant-appellee, KeyBank National Association ("KeyBank"). Because the trial court erred in applying R.C. 5301.232(B), we reverse.

On September 27, 1999, plaintiffs-appellees, Marcia E. Kent and Lawrence Kent ("Kents"), filed a declaratory judgment action in the Franklin County Court of Common Pleas. The Kents requested that the court determine the validity and priority of mortgages held by Huntington and KeyBank on the Kents' Drexel Avenue property in Bexley, Ohio. Answers, counterclaims, and cross-claims were filed by both Huntington and KeyBank.

The case concerns two mortgages: one held by Huntington and one held by KeyBank. On September 10, 1991, the Kents granted an open-end mortgage on their Drexel Avenue property to Huntington to secure a line of credit up to $200,000. On September 24, 1991, Huntington recorded the mortgage with the county recorder's office. Approximately three years later, on October 20, 1994, the Kents granted an open-end mortgage on the same property to KeyBank's predecessor, Society National Bank ("Society"), in exchange for $375,000. The second mortgage was recorded on October 25, 1994, with the county recorder. As part of the Kents' transaction with Society, Society allegedly issued a payment

of approximately $174,564 to Huntington, purportedly canceling, or nearly canceling, the Kents' indebtedness to Huntington.

After October 1994, the Kents borrowed additional money from Huntington that now allegedly totals approximately $190,000. Huntington and KeyBank dispute whether the additional money was borrowed pursuant to the Kents' 1991 personal line of credit agreement with Huntington that was secured by the 1991 open-end mortgage, or whether the additional money was borrowed pursuant to another agreement between the Kents and Huntington.

On March 30, 2000, Huntington filed a motion for summary judgment against KeyBank concerning Huntington's cross-claim against KeyBank and KeyBank's cross-claim against Huntington. KeyBank responded with a cross-motion for summary judgment. On October 31, 2000, the trial court rendered a decision overruling Huntington's summary judgment motion and sustaining KeyBank's cross-motion for summary judgment. The trial court entered judgment accordingly. Huntington appeals, assigning the following errors:

"Assignment of Error No. 1: The trial court erred in granting Keybank's cross–motion for summary judgment."

"Assignment of Error No. 2: The trial court erred in denying Huntington's motion for summary judgment."

An appellate court's review of summary judgment is conducted under a *de novo* standard. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. Summary judgment is proper only when the parties moving for summary judgment demonstrate (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 677 N.E.2d 343.

Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.; Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d

1164. Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher, supra,* at 293, 662 N.E.2d 264; *Vahila, supra,* at 430, 674 N.E.2d 1164; Civ.R. 56(E). See, also, *Castrataro v. Urban* (Mar. 7, 2000), Franklin App. No. 99AP–219, unreported, 2000 WL 254315.

Huntington's first assignment of error asserts that the trial court erred in granting KeyBank's cross-motion for summary judgment. Specifically, Huntington notes that the trial court *sua sponte* applied R.C. 5301.232(B) to resolve the matters in contention between Huntington and KeyBank.

Under its analysis and application of R.C. 5301.232(B), the trial court found the following:

"[T]he Court finds that under 5301.232(B), Huntington's mortgage loses its priority status over that of KeyBank due to the fact that (1) Huntington received notice of KeyBank's mortgage, and (2) Huntington was not contractually obligated to make any advances to Plaintiffs subsequent to the expiration of the five year Draw Period [that was specified in the Kents' 1991 agreement with Huntington]. Consequently, KeyBank's mortgage is first and best and holds priority over that held by Huntington. However, the Court does not find that Huntington's mortgage is either satisfied or released, but rather, it simply loses its priority status with respect to the mortgage held by KeyBank."

Even assuming *arguendo* that Huntington's agreement with the Kents is an open-end mortgage pursuant to R.C. 5301.232(A), and Huntington was not obligated to make advances to the Kents after the expiration of the five-year draw period under the Kents' 1991 agreement with Huntington, the trial court's application of R.C. 5301.232(B) nonetheless is in error.

R.C. 5301.232(B) provides:

"A mortgage complying with division (A) of this section and securing unpaid balances of loan advances referred to in such division is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made. *If such an advance is made after the holder of the mortgage receives written notice of a lien or encumbrance on the mortgaged premises which is subordinate to the lien of the mortgage, and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to such lien or encumbrance.  \* \* \*"* (Emphasis added.)

■ Under R.C. 5301.232(B), if Huntington was not obligated to advance money to the Kents after the expiration of the five-year draw period, and if Huntington advanced money to the Kents after receiving written notice from KeyBank of KeyBank's subordinate mortgage, then KeyBank's mortgage would have priority over Huntington's advancements that were made after the expiration of the five-year draw period.

For a written notice to be valid under R.C. 5301.232(B), it must conform to the requirements of R.C. 5301.232(D), which include (1) signature of the holder of the lien or encumbrance, (2) description of the property, the date, and the involved parties, (3) the recorder's file number, or the volume and initial page of the record, (4) the amount of the claim, and (5) service according to statute.

In its decision, the trial court determined that "Huntington itself has never disputed that it received payments from KeyBank contemporaneous with the filing of its [KeyBank's] mortgage, or that it was notified of KeyBank's respective subsequent open-ended [*sic*] mortgage." Although Huntington arguably may have been notified of KeyBank's mortgage through its receipt of payments from KeyBank, there is no evidence in the record indicating that KeyBank complied with the written notice requirements of R.C. 5301.232(D). Because KeyBank did not comply with the mandatory requirements of R.C. 5301.232(D), the trial court erred when it determined that Huntington received proper notice. See *Leader Mtge. Co. v. Slattery* (July 12, 1996), Lake App. No. 95–L–146, unreported, 1996 WL 648739 ("R.C. 5301.232[D] does not elevate subordinate lienholders where the senior lienholder has actual notice, the section explicitly requires that before a subordinate lienholder can be so elevated, notice complying with subsection [D] *must* be given by the party claiming such priority status").

Moreover, Huntington was prejudiced by the trial court's independent application of R.C. 5301.232, as it deprived both Huntington and KeyBank of an opportunity to submit evidence, as well as brief the issues, related to R.C. 5301.232. Accordingly, Huntington's first assignment of error is sustained.

Huntington's second assignment of error asserts that the trial court erred in denying Huntington's motion for summary judgment. Although the evidence does not indicate that KeyBank complied with the notice requirement in R.C. 5301.232(D), that omission does not necessarily mean that Huntington is entitled to summary judgment.

The trial court determined Huntington's priority status under R.C. 5301.232(B). As noted, however, the trial court's priority determination was in error because, based on the evidence before the trial court, KeyBank failed to give proper written notice pursuant to R.C. 5301.232(D).

■ If on remand the trial court accepts Huntington's argument that the 1991 open-end mortgage was still in force and Huntington's advancements to the Kents after the expiration of the five-year draw period were made pursuant to the 1991 open-end mortgage, then Huntington may prevail as a matter of law if Huntington was obligated to make these advancements. See R.C. 5301.232(B); see, also, *Colonial Mtge. Serv. Co. v. Southard* (1978), 56 Ohio St.2d 347, 10 O.O.3d 481, 384 N.E.2d 250, syllabus ("Pursuant to R.C. 5301.232[B], an otherwise subordinate lien will not receive priority over an advance made by the holder of an open-end mortgage if the mortgage holder is obligated to make such advance at the time the notice of lien is received"). If, however, the trial court determines that Huntington was not obligated to make advancements to the Kents pursuant to the 1991 open-end mortgage and credit line agreement, then the trial court must determine whether under R.C. 5301.232(D) proper notice was provided by KeyBank to subject Huntington's advancements to subordinate status under R.C. 5301.232(B).

Last, we note that the trial court did not make any determinations concerning other issues, including the current status of Huntington's 1991 open-end mortgage. As the trial court noted, "the Court does not find that Huntington's mortgage is either satisfied or released, but rather, it simply loses its priority status with respect to the mortgage held by KeyBank." In the event R.C. 5301.232(B) does not apply, a determination of Huntington's 1991 open-end mortgage status will be necessary to adjudicate KeyBank's claims. If the trial court accepts KeyBank's contentions that (1) Huntington's 1991 mortgage was satisfied when KeyBank made payments to Huntington in 1994, and Huntington failed to release the 1991 mortgage, or (2) Huntington's advancements to the Kents that were made after the five-year period were based on another agreement, then the trial court will be required to make a determination about the status of Huntington's 1991 open-end mortgage and Huntington's advancements. Because the trial court limited its analysis to a priority determination under R.C. 5301.232 and did not determine these other issues, we decline to address them in the first instance. Huntington's second assignment of error is overruled as premature.

Having overruled Huntington's second assignment of error, but having sustained its first assignment of error, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this decision.

*Judgment reversed*
*and case remanded.*

BROWN and TYACK, JJ., concur.