OPINION
{¶ 1} This is an appeal by defendant-appellant, Cross Tabernacle Deliverance Church, Inc., from entries of the Franklin County Court of Common Pleas, granting partial summary judgment in favor of plaintiff-appellee, First Financial Services, Inc. ("First Financial"), denying appellant's motion for leave to file an amended answer and *Page 2 
counterclaim, denying appellant's motion to vacate summary judgment, and overruling appellant's objections to a magistrate's decision.
 {¶ 2} On December 5, 2003, First Financial filed a complaint on a note, alleging that appellant had executed a note and mortgage in favor of First Financial, with the mortgage securing two parcels of real property located at 1140 Williams Road, Columbus. The complaint alleged that appellant was in default on those instruments, owing the sum of $1,814,945.03.
 {¶ 3} On January 20, 2004, appellant filed a motion for additional time to move or plead in response to First Financial's complaint. By entry filed February 17, 2004, the trial court granted the motion, allowing appellant until March 4, 2004, to move or plead to the complaint. On March 4, 2004, appellant filed a notice of removal with the United States District Court, Southern District of Ohio. The federal court, however, subsequently remanded the case back to the Franklin County Court of Common Pleas.
 {¶ 4} On August 13, 2004, First Financial filed a motion for summary judgment against appellant. Attached to the motion was the affidavit of Joe Craft, President of First Financial, as well as copies of a "mortgage and security agreement" and a "trust indenture" agreement. In his affidavit, Craft averred that appellant had executed a mortgage agreement in favor of First Financial on December 22, 2000, securing a trust indenture agreement, dated September 1, 2000, with real estate located at 1140 Williams Road, Columbus. Craft averred that, pursuant to the terms of the note, appellant promised to make payments of certain bonds issued in the total amount of $1,520,000 plus interest, but that appellant was currently in default on the note and mortgage. *Page 3 
 {¶ 5} On August 30, 2004, appellant filed a memorandum contra First Financial's motion for summary judgment. Attached to the memorandum was the affidavit of George Dawson, Jr., the Pastor, President, and CEO of appellant. In his affidavit, Dawson stated that the trust indenture agreement and security agreement did not comply with federal or state securities laws. He further averred that appellant had not received from First Financial complete copies of all agreements, contracts, bond records, closing statements and related documents that were prepared and executed in connection with the transaction. Finally, Dawson averred that First Financial had made unauthorized distributions of proceeds from the transaction to a construction architect, resulting in significant loss and damages to appellant. Appellant also argued in the memorandum that it had not had an opportunity to conduct adequate discovery.
 {¶ 6} On September 9, 2004, First Financial filed a reply to appellant's memorandum. Appellant subsequently filed a motion for leave to file a "sur-reply" in response to First Financial's reply in support of its motion for summary judgment. On October 4, 2004, First Financial filed a motion to strike appellant's surreply. By entry filed December 2, 2004, the trial court denied appellant's motion for leave to file a surreply, and thus granted First Financial's motion to strike.
 {¶ 7} On November 15, 2004, appellant filed a "first amended answer and counterclaim." In its counterclaim, appellant sought to allege causes of action for fraud in the inducement, conflict of interest, and breach of contract. First Financial filed a motion to strike appellant's first amended complaint and counterclaim, asserting in part that appellant had failed to seek leave to file an untimely pleading. On December 14, 2004, appellant filed a motion for leave to file the amended answer and counterclaim. The trial *Page 4 
court subsequently filed an entry denying appellant's motion for leave, and granting the motion to strike.
 {¶ 8} By decision filed December 15, 2004, the trial court granted in part, and denied in part, First Financial's motion for summary judgment. The court found that appellant had presented no evidence that the bonds issued under the trust indenture agreement were not exempt from the registration requirements of the Trust Indenture Act, and further found that the trust indenture agreement was valid and enforceable. The court found, however, a genuine issue of material fact remained as to the amount appellant owed under the trust indenture agreement and mortgage, and the court therefore referred the matter to a magistrate to conduct a hearing on the issue of damages. The decision of the trial court, granting in part and denying in part First Financial's motion for summary judgment, was journalized by judgment entry filed February 16, 2005.
 {¶ 9} The issue of damages came for hearing before a magistrate on May 26, 2005. The magistrate issued a decision on May 31, 2005, recommending that judgment be entered in favor of First Financial in the amount of $1,781,913.42. Appellant filed objections to the magistrate's decision, and First Financial filed a reply.
 {¶ 10} On February 16, 2006, appellant filed an "emergency" motion to vacate the trial court's grant of summary judgment, as well as a motion for reconsideration of the court's decision denying appellant's motion for leave to file an amended answer and counterclaim. First Financial filed a motion in opposition to appellant's motion.
 {¶ 11} By decision and entry filed March 31, 2006, the trial court denied appellant's motion to vacate and motion for reconsideration. The court ruled that appellant's motion *Page 5 
was untimely filed, and also found that appellant failed to meet the requirement for entitlement to relief on the grounds of newly discovered evidence or fraud, misrepresentation or other misconduct. Also on March 31, 2006, the trial court overruled appellant's objections to the magistrate's decision.
 {¶ 12} Appellant has appealed the trial court's entries rendered on February 16, 2005 and March 31, 2006, setting forth the following six assignments of error for this court's review:
 [I.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIM WHERE JUSTICE REQUIRED LEAVE TO BE GRANTED AND WHERE THE COURT FAILED TO FIND THAT THERE WAS UNDUE PREJUDICE OR DELAY TO THE APPELLEE.
 [II] THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR LEAVE TO FILE A SUR-REPLY IN SUPPORT OF ITS OPPOSITION TO THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE THE SUR-REPLY INCLUDED INFORMATION WHICH WAS HIGHLY RELEVANT TO THE COURT'S CONSIDERATION OF THE APPELLANT'S OPPOSITION TO SUMMARY JUDGMENT.
 [III] THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY UNDER THE TRUST INDENTURE AND MORTGAGE AND SECURITY AGREEMENT WHERE THERE REMAINED MATERIAL FACTUAL DISPUTES TO BE LITIGATED.
 [IV] THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION WHERE THERE WERE COMPELLING GROUNDS TO SUSTAIN EACH OBJECTION.
 [V] THE TRIAL COURT ERRED IN ADOPTING, IN ITS ENTIRETY, THE MAGISTRATE'S DECISION REGARDING
 *Page 6 
DAMAGES WHERE THE MAGISTRATE'S DECISION WAS FLAWED.
 [VI] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S COMBINED MOTION TO VACATE THE SUMMARY JUDGMENT AND FOR RECONSIDERATION OF ITS DECISION DENYING APPELLANT'S LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIM WHERE THE APPELLANT DEMONSTRATED ENTITLEMENT TO RELIEF UNDER CIVIL RULE 60(B) AND WHERE THE CHURCH'S PROPOSED COUNTERCLAIM STATED CLAIMS UPON WHICH RELIEF COULD BE GRANTED.
 {¶ 13} Appellant's assignments of error are somewhat interrelated and will be considered together. We will first address appellant's contention that the trial court erred in granting First Financial's motion for summary judgment.
 {¶ 14} We initially note this court's standard of review in considering a trial court's summary judgment decision. In Kent v. TheHuntington Natl. Bank (2001), 145 Ohio App.3d 745, 747-748, this court set forth that standard as follows:
 An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 677 N.E.2d 343.
 Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio *Page 7 
St.3d 280, 293, 662 N.E.2d 264. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. Id.; Vahila v. Hall (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, supra, at 293; Vahila, supra, at 430; Civ.R. 56(E). * * *
 {¶ 15} In its decision granting partial summary judgment in favor of First Financial, the trial court noted that the parties had executed a trust indenture agreement, dated September 1, 2000, under which appellant was to issue bonds upon terms and conditions set forth therein, and First Financial was to act as trustee for the benefit of the bondholders. As security for the performance of its obligations under the trust indenture agreement, appellant executed a mortgage and security agreement in favor of First Financial on December 22, 2000. The mortgage secured appellant's obligations under the trust indenture agreement, including payment of the bonds issued by appellant, in the total principal amount of $1,520,000.
 {¶ 16} Pursuant to the trust indenture agreement, appellant was required to deposit specified amounts into a bond repayment fund in accordance with a schedule. The funds in the bond repayment fund were to be expended for the payment of principal and interest on the bonds as they matured and became due. The trial court found that appellant's failure to make payments into the bond fund, when due, constituted an event of default under the trust indenture agreement. Further, the failure by appellant to pay *Page 8 
any other amounts when due under the trust indenture agreement similarly constituted an event of default under the mortgage.
 {¶ 17} Appellant argues, as it did before the trial court, that the trust indenture agreement, and the bonds allegedly issued pursuant thereto, violated the Trust Indenture Act of 1939, 15 U.S.C.S. § 77aaa, et seq., because they were not registered with federal or state regulatory agencies. We note that, in its memorandum contra the motion for summary judgment, appellant did not elaborate as to how the indenture agreement violated federal securities laws, except to generally assert that the transaction "has not been registered with federal or state securities regulatory agencies and is not exempt from such registration." Appellant further contended in the memorandum that, because registration of the transaction was required under both federal and state securities laws, "the church was fraudulently induced into executing the Indenture, Security Agreement, and other Transaction Documents."
 {¶ 18} The trial court found that appellant had failed to cite any statutory basis for its claim that the trust indenture agreement and the bonds issued thereunder were required to be registered with federal regulatory agencies. Rather, the trial court noted that appellant, a not-for-profit church, is organized and operated exclusively for religious purposes and not for pecuniary profit. The trial court, citing the provisions of 15 U.S.C.S. § 77c(a)(4), found that registration was not required under federal law. Further, in the absence of a registration requirement, the trial court concluded that First Financial's alleged advice to appellant regarding registration did not constitute fraudulent inducement. *Page 9 
 {¶ 19} 15 U.S.C.S. § 77c(a)(4), states in part as follows:
 (a) Exempted securities. Except as hereinafter expressly provided, the provisions of this title [15 USCS §§ 77a et seq.] shall not apply to any of the following classes of securities:
 * * *
 (4) Any security issued by a person organized and operated exclusively for religious, educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any person, private stockholder, or individual * * *
 {¶ 20} In the instant case, appellant, a not-for-profit religious organization, was the issuer of the securities under the trust indenture agreement, and we agree with the trial court that the plain language of § 77c(a)(4) expressly provides an exemption for religious (and other) non-profit organizations from the registration provisions of the Securities Act of 1933 ("Securities Act"). See, e.g., SEC v. World RadioMission, Inc. (C.A.1, 1976), 544 F.2d 535, 537 ("[securities issued by nonprofit religious organizations are exempt from the registration provisions of the 1933 act, 15 U.S.C. 77c[a][4]"); In re Calozza
(W.D.Wash. Apr. 21, 1995), No. C94-1566Z (because defendant is a fraternal benefit society, not organized or operated for pecuniary profit, defendant is not subject to the registration requirements of15 U.S.C.S. § 77c(a)(4) "and any securities issued by [the society] would not have to be registered in accordance with the Act"); Bloomenthal Wolff, Securities Federal Corporate Law, Section 2:109 (2nd Ed.) ("[t]he bonds of church institutions can be issued pursuant to this exemption, which is an exemption from registration under both [15 U.S.C.S. § 77c(a)(4), and 15 U.S.C.S. § 781
(a)(2)(D)]").
 {¶ 21} As noted, in its memorandum contra First Financial's motion for summary judgment, appellant's allegation of fraudulent inducement was premised upon First *Page 10 
Financial's failure to register the securities. However, in the absence of any statutory requirement under federal law to register the securities, the trial court properly concluded that there was no genuine issue of material fact as to appellant's claim of fraudulent inducement in granting partial summary judgment in favor of First Financial.
 {¶ 22} The trial court also found no merit to appellant's contention that the transaction was void based upon alleged violations of Ohio's securities laws, as set forth under R.C. Chapter 1707. In its memorandum contra First Financial's motion for summary judgment, appellant argued that the transaction was void because the bonds allegedly issued were not registered with the Ohio Division of Securities.
 {¶ 23} In addressing appellant's argument, the trial court cited R.C.1707.38, which states in part: "The issuance or sale of any security in violation of sections 1707.01 to 1707.45, inclusive, of the Revised Code, does not invalidate such security; but the rights of persons defrauded by any such issuance or sale shall not be impaired." The trial court further observed that, pursuant to R.C. 1707.43, the sale of securities in violation of R.C. Chapter 1707 is voidable at election of the purchaser. See, also, Pencheff v. Adams (1983), 5 Ohio St.3d 153, syllabus ("[f]ailure to comply with R.C. 1707.44[C][1] materially affects the protection contemplated by that provision and entitles a purchaser of unregistered securities to the relief provided under R.C. 1707.43"); Collins v. Papouras (Nov. 15, 1989), Summit App. No. 14073 ("[a] sale of an unregistered, non-exempt security is voidable if the buyer so elects"). The trial court, noting that appellant was neither an investor nor purchaser of securities in the instant case, but, rather, that appellant "itself issued the securities it now claims were improperly issued," held that "R.C. Chapter 1707 provides no remedy, defense, or cause of action for an issuer of *Page 11 
securities, such as [appellant] herein, who fails to comply with securities registration requirements."
 {¶ 24} We agree with the trial court that the purpose of Ohio's Security Act is directed toward protecting investors and purchasers of securities. In this respect, the Ohio Supreme Court has held that the Ohio Securities Act was adopted "to prevent the fraudulent exploitation of the investing public through the sale of securities." In re ColumbusSkyline Securities, Inc. (1996), 74 Ohio St.3d 495, 498. See, also,Crater v. Internatl. Resources, Inc. (1993), 92 Ohio App.3d 18, 23
("[t]he purpose behind R.C. Chapter 1707 is `to protect the public from its own stupidity, gullibility and avariciousness' by preventing securities from being sold without first subjecting both the securities and the securities dealers to reasonable licensing and registration requirements"), quoting Bronaugh v. R. E. Dredging Co. (1968),16 Ohio St.2d 35, 40-41. See, also, Sorenson v. Tenuta (1989),62 Ohio App.3d 696, 702 ("[t]he purpose of the statute * * * is to protect the public from the sale of unregistered securities").
 {¶ 25} Here, the trial court essentially recognized that appellant's attempt to raise as a defense the provisions of Ohio's Securities Act following its failure, as an issuer of securities, in making repayments to the bond fund, was at odds with the purpose of Ohio's securities laws, i.e., to protect investors of securities. Stated otherwise, appellant's interests as a bond issuer are not representative of the interests of investors or purchasers, i.e., bondholders. Also implicit in the trial court's determination that the trust indenture was not voidable at the issuer's request is the fact that appellant was not harmed by the lack of any registration; rather, appellant received loan proceeds as a result of the issuance of the bonds, and, thus, received the benefits of any alleged *Page 12 
violation of state securities laws. Upon review, we find no error with the trial court's determination that any failure on the part of First Financial to register the bonds under Ohio law "does not excuse [appellant's] failure to meet its obligations under the Trust Indenture Agreement and Mortgage it admittedly executed." We also find no error with the trial court's determination that there exist no genuine issues of material fact regarding appellant's default under the mortgage agreement.
 {¶ 26} Regarding appellant's contention that it had not received certain documents regarding the sale and ownership of the bonds, as well as a legal opinion prepared in connection with the trust indenture agreement, the trial court noted that the instant action had been filed on December 5, 2003, approximately eight months prior to First Financial's motion for summary judgment. Further, appellant had unsuccessfully attempted to remove the case to federal district court, but the federal court remanded the matter back to the trial court. The trial court found that "neither the procedural shuffling of this case between state and federal court nor the lack of a new case scheduling order prevented the parties hereto from engaging in discovery." The court further noted that, despite appellant's contention it had been requesting the allegedly withheld documents for over a year, appellant had not filed a motion to compel production of such documents. Finally, the trial court concluded that appellant had failed to demonstrate how the allegedly withheld documents would yield facts essential to justify its opposition to appellee's motion for summary judgment.
 {¶ 27} Civ.R. 56(F), which permits a party to request a continuance in order to obtain additional discovery, states as follows: *Page 13 
 * * * Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
 {¶ 28} A party requesting a continuance under Civ.R. 56(F) bears the burden of establishing why such party cannot present sufficient facts to justify its opposition to summary judgment without a continuance.Singleton v. Ohio Concrete Resurfacing, Inc., Franklin App. No. 06AP-991, 2007-Ohio-2012, at ¶ 21. A reviewing court will not reverse a trial court's denial of a Civ.R. 56(F) motion absent an abuse of discretion. Id.
 {¶ 29} In the instant case, we find no abuse of discretion by the trial court in determining that appellant was afforded sufficient time for discovery. The record also supports the trial court's finding that appellant failed to file a motion to compel discovery, assuming it found inadequate First Financial's response to its discovery requests, nor did appellant's affidavit provide any explanation for its failure to file a motion to compel. In light of the record presented, we find no error by the trial court in refusing to delay its ruling on the motion for summary judgment.
 {¶ 30} Based upon this court's de novo review, we agree with the trial court that appellant's claims of fraudulent inducement and unenforceability of the trust indenture and security agreement do not create genuine issues of material fact as to appellant's obligations under the instruments. We therefore conclude that the trial court did not err in granting partial summary judgment in favor of First Financial.
 {¶ 31} We next address appellant's contention that the trial court erred in failing to grant its motion for leave to amend its pleadings. Appellant argues that its motion for *Page 14 
leave to file an amended answer materially changed the content of its answer, adding multiple affirmative defenses, and asserting counterclaims upon which relief could be granted.
 {¶ 32} Civ.R. 15(A) states in part:
 * * * A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.
 {¶ 33} Whether to grant leave to amend pleadings lies within the sound discretion of the trial court. Farmers Production Credit Assn. ofAshland v. Johnson (1986), 24 Ohio St.3d 69, 72. If a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, the trial court acts within its discretion to deny a motion to amend the pleading. Wilmington Steel Products, Inc. v. Cleveland Elec.Illum. Co. (1991), 60 Ohio St.3d 120, 123.
 {¶ 34} As noted under the facts, First Financial filed its complaint on December 5, 2003, and appellant filed its first amended answer and counterclaim on November 15, 2004. On December 1, 2004, First Financial filed a motion to strike appellant's amended answer and counterclaim, asserting that the answer was filed over seven months after the deadline set forth in Civ.R. 15(A), and noting that appellant had failed to seek leave to amend. On December 14, 2004, appellant filed a combined motion for leave to file its first *Page 15 
amended answer and counterclaim, and a memorandum contra First Financial's motion to strike appellant's first amended answer and counterclaim.
 {¶ 35} Appellant's motion for leave sought to amend its answer to include the following affirmative defenses: (1) fraud in the inducement; (2) discovery violations; (3) unenforceability of the trust indenture; (4) conflict of interest; and (5) a right to setoff because of alleged wrongful distributions. Appellant also sought to add the following counterclaims: (1) fraud in the inducement; (2) conflict of interest; and (3) breach of contract (based upon First Financial's alleged failure to produce records from the sale of bonds pursuant to the trust indenture). The trial court, in denying appellant's motion for leave, held in part: "In its First Amended Answer and Counterclaim, [appellant] sets forth as affirmative defenses and counterclaims the very defenses it argued in opposition to [First Financial's] motion for summary judgment."
 {¶ 36} Upon review, the record supports the trial court's finding that the majority of affirmative defenses in the amended answer and counterclaim involved issues previously raised, and which the trial court addressed in ruling on the summary judgment motion. In asserting the affirmative defense of fraud in the inducement, appellant argued, as it had in response to the motion for summary judgment, that First Financial fraudulently induced it to sign the trust indenture agreement by advising it that the proposed bond offering was exempt from federal and state registration laws. As noted above, the trial court rejected that argument in granting partial summary judgment in favor of First Financial. The trial court also addressed, in its summary judgment decision, appellant's claims regarding the enforceability of the trust indenture, conflict of interest, and First Financial's purported failure to comply with appellant's request for certain records. Finally, in its entry denying *Page 16 
appellant's motion for leave, the trial court noted that the only remaining issue was the amount of damages, which the court had scheduled to be heard by a magistrate.
 {¶ 37} Here, inasmuch as the trial court considered, in ruling on the motion for summary judgment, the issues and defenses sought to be raised in the amended answer and counterclaim (finding them to be insufficient in law or inapplicable), we find the court did not abuse its discretion in denying appellant's motion for leave. See Medley v. City ofPortsmouth (Dec. 23, 1996), Scioto App. No. 96 CA 2426 (trial court properly denied motion for leave where issue had previously been raised and trial court had already rendered judgment on issue of liability). Further, as indicated above, as to the remaining issue involving appellant's claim that it was entitled to a setoff for wrongful distributions by First Financial, the magistrate subsequently addressed that claim at the damages hearing.
 {¶ 38} Appellant also contends that the trial court erred in denying its motion for leave to file a surreply in opposition to First Financial's motion for summary judgment. In its proposed surreply, appellant again raised arguments that the transaction at issue was not exempt from federal and state registration requirements, and that the trust indenture was unenforceable. Appellant also asserted that First Financial could not substantiate its monetary claim, and that it had made unauthorized distributions of funds to contractors for work that was never performed. The trial court, in its entry denying appellant's motion for leave to file a surreply, indicated it had reviewed the matters contained in the proposed surreply and found that "permission to file a surreply is unwarranted herein."
 {¶ 39} We have reviewed appellant's motion for leave, and we find that the trial court could have reasonably concluded that the proposed filing did not add anything new, *Page 17 
nor did it include matters that could not have been raised in its initial response to the motion for summary judgment. We also note that the Ohio Rules of Civil Procedure contain no provision for filing a surreply to a motion for summary judgment. Perlmutter v. People'sJewelry Co., Lucas App. No. L-04-1271, 2005-Ohio-5031, at ¶ 4, fn. 1. Accordingly, it was within the discretion of the trial court whether to grant appellant's motion for leave to file a surreply. Morris-Walden v.Moore, Cuyahoga App. No. 87989, 2007-Ohio-262, at ¶ 27. Here, appellant has failed to demonstrate that the trial court abused its discretion in denying the motion for leave.
 {¶ 40} Under its fourth and fifth assignments of error, appellant asserts that the trial court should have sustained each of its objections to the magistrate's decision. More specifically, appellant argues that the magistrate erred in: (1) applying the law of recoupment; (2) finding that appellant failed to demonstrate how the bond records yielded facts essential to appellant's opposition to First Financial's claimed damages; (3) finding that First Financial did not breach the terms of the bond service agreement; and (4) awarding First Financial interim financing, broker commissions and fees, and amounts deducted from distributions to appellant to pay sinking fund payments.
 {¶ 41} By way of background, the magistrate conducted a damages hearing on May 26, 2005, regarding First Financial's claim that the total amount due and owing was $1,903,913.42. Appellant countered that the amount claimed by First Financial was incorrect, asserting that not all distributions made by First Financial from the bond fund were authorized by appellant as required by the bond service agent agreement. Specifically, appellant argued that a payment of $122,000 to George Cutler, a presumed agent of First Financial, was not specifically authorized. *Page 18 
 {¶ 42} The magistrate issued a decision on May 31, 2005, finding that judgment should be entered in favor of First Financial in the amount of $1,781,913.42. More specifically, the magistrate found that First Financial had proven damages in the amount of $1,903,913.42, representing principal, interest, matured bonds unredeemed, interim financing, and call fees. The magistrate further found, however, that appellant was entitled to recoup $122,000 of that amount for unauthorized payments made to Cutler, an architect who was initially hired to draw up plans for improvements to the property. In considering the evidence, the magistrate found that "this particular payment was not properly authorized and was made improperly and without proper fiduciary oversight to insure that Mr. Cutler would perform as agreed." Appellant filed objections to the magistrate's decision, and by decision filed March 31, 2006, the trial court overruled those objections.
 {¶ 43} Appellant first challenges the trial court's overruling of its objection regarding the issue of recoupment. Appellant argues it offered evidence that, as a result of First Financial's premature and unauthorized payments to Cutler, it was forced to pay $62,000 in order to retain another construction architect willing to take over the project, and was forced to spend an additional $15,000 to obtain new blueprints and site plans. Further, according to appellant, as a result of the premature and unauthorized payments by First Financial, it lost half of its congregational members, resulting in losses in tithes and offerings of $461,250.
 {¶ 44} Ohio law recognizes "the common-law defense of recoupment to reduce damages sought to be recovered by a plaintiff." Ernst v. OhioDept. of Adm. Serv. (Sept. 11, 1990), 69 Ohio App.3d 330, 338-339. "Recoupment" has been defined as "an *Page 19 
affirmative defense, arising out of the same transaction as a plaintiff's claim, which entitles the defendant to reduce the amount demanded, but only to the extent sufficient to satisfy the plaintiff's claim." Kamlani v. A.C. Leadbetter Son, Inc., Lucas App. No. L-05-1277, 2006-Ohio-2116, at ¶ 16.
 {¶ 45} In addressing appellant's objection to the magistrate's decision on the issue of recoupment, the trial court held in relevant part:
 Defendant essentially argues that via a domino effect, Mr. Cutler's failure to do his work caused all of Defendant's problems, which in turn caused all of Defendant's supposed damages. * * * Defendant, however, offered no evidence at the hearing that this domino effect was in any way caused by the actions of Plaintiff in making the unauthorized payments to Mr. Cutler. In fact, Defendant has offered no evidence that Mr. Cutler would have performed the work had the unauthorized payments not been made. Furthermore, George Dawson, pastor, president and C.E.O. for Defendant, testified that it was his decision to demolish the interior of Defendant's building and to move the congregation, resulting in much of the loss claimed by Defendant.
 Defendant was given the opportunity to present evidence that the unauthorized payments and its alleged damages were related. Defendant presented evidence that a new architect was hired and that new plans were required, but it failed to show that its alleged damages were caused by Plaintiff. Regardless of the actions of Plaintiff and Mr. Cutler, Defendant would have had to hire and pay an architect to draw up plans. * * * The Magistrate saw this and found that Plaintiff did not cause Defendant's alleged damages. Upon review of the evidence presented, this Court agrees with the Magistrate and finds that Defendant's alleged damages are unrelated to the unauthorized payments to Mr. Cutler. The Magistrate properly limited the amount allowed as recoupment to the unauthorized amount actually paid by Plaintiff to Mr. Cutler, which was $122,000. This Court will not upset the magistrate's finding on this issue.
(Footnotes omitted.) *Page 20 
 {¶ 46} Upon review, we find no error on the part of the trial court in adopting the magistrate's recommendation to limit recoupment to $122,000. Dawson acknowledged during the hearing that he made the decision to demolish the interior wall of the Williams Road property before a second architect was hired, testifying that, at the time the decision was made to begin demolition, we "didn't have him hired yet." (Tr. at 73.) According to Dawson, after Cutler failed to show up, "we start[ed] to work within the place with our own congregates, tearing up, knocking — ." (Tr. at 53.) While Dawson denied that appellant's own decision to start the destruction of the Williams Road property caused the eviction of a tenant at another property it owned, thereby necessitating repairs at that other property, it was within the province of the trier of fact to determine whether appellant's own actions resulted in "much of the loss" claimed by appellant. Here, there was some evidence upon which the magistrate and trial court could find that the actions of First Financial did not cause the damages sought by appellant beyond the $122,000 recoupment allowed.
 {¶ 47} Appellant also objected to the magistrate's finding that appellant failed to demonstrate how the allegedly withheld documents would yield facts essential to its opposition to First Financial's claimed damages. The magistrate, while noting that the trust indenture agreement contained a provision for appellant to inspect copies of all pertinent documents relating to the bonds, found no evidence to support the conclusion that appellant was prevented from seeing documents maintained by First Financial, presumably at its home office in Indiana. Further, the magistrate noted that the trial court, in ruling on First Financial's motion for summary judgment, had previously found that the documents at issue were discoverable by means of traditional discovery devices, and that *Page 21 
appellant failed to demonstrate how the allegedly withheld documents would yield facts essential to justify its opposition to the claimed damages.
 {¶ 48} In addressing this objection, the trial court similarly noted that this issue had previously been addressed by the court in its decision on the motion for summary judgment, and, therefore, did not constitute a valid objection. The court referenced its prior decision in which it held that appellant failed to use the discovery devices available to it to obtain the information sought. Finally, the court held that this purported breach would not, in and of itself, serve to relieve appellant from repaying the substantial sums it accepted from the bond proceeds. Similarly, as to appellant's objection that First Financial did not breach the bond service agreement, the trial court noted that it had previously determined, in ruling on the motion for summary judgment, that there was no breach of the agreement, nor would such a purported breach "in itself serve to relieve [appellant] from repaying the over $1,500,000 it accepted from the bond proceeds." The record supports the trial court's determination that the above issues had been previously addressed in the court's ruling on summary judgment, and we will not disturb the court's ruling on those objections.
 {¶ 49} Appellant also objected to the magistrate's award of interim financing, broker commissions, and fees, as well as amounts deducted from distributions to satisfy the bond repayment fund. Appellant argued that, because it had not seen evidence that the bonds are actually issued, it was not obligated to pay these fees. The trial court rejected this argument, again noting that appellant had sufficient opportunity to use the various discovery devices available to obtain this information. We have previously *Page 22 
addressed the trial court's ruling as to discovery issues, and we find no error by the court in overruling this objection.
 {¶ 50} Appellant's final argument is that the trial court erred in denying its Civ.R. 60(B) motion to vacate summary judgment, and in denying its motion for reconsideration of the court's decision denying appellant leave to file an amended answer and counterclaim. In its motion, appellant asserted generally that it was entitled to relief under the grounds stated in Civ.R. 60(B)(1) through (5), but in its accompanying memorandum, it focused primarily upon relief under Civ.R. 60(B)(2), asserting newly discovered evidence.
 {¶ 51} In order to prevail on a motion to vacate, pursuant to Civ.R. 60(B), a movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time.Jones v. Gayhart, Montgomery App. No. 21838, 2007-Ohio-3584, at ¶ 9, citing GTE Automatic Elec. v. ARC Industries (1976), 47 Ohio St.2d 146,150. A motion for relief from judgment, under Civ.R. 60(B), is addressed to the sound discretion of the trial court, and such ruling will not be disturbed on appeal absent a showing of an abuse of discretion.Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77.
 {¶ 52} Appellant first argues that the trial court incorrectly determined that the motion was not filed within one year of the judgment from which relief was sought. Appellant notes that, while the trial court's summary judgment decision was rendered on December 14, 2004, the court's judgment entry was not filed until February 16, 2005. Appellant filed its "emergency" motion to vacate on February 16, 2006. Thus, appellant *Page 23 
contends, its Civ.R. 60(B) motion was timely. In response, First Financial argues that the trial court did not find that the motion was untimely because it was filed after one year; rather, it maintains, the court found appellant's motion untimely even though it was filed before the one-year deadline.
 {¶ 53} A review of the trial court's decision indicates that the court discussed not only the one-year time limitation, but also the issue of reasonableness. Specifically, the trial court noted that, while a motion may not exceed one year under Civ.R. 60(B)(1), (2) or (3), this "does not mean that a period of less than one year is automatically considered reasonable."
 {¶ 54} In Wolfe v. Cahill, Cuyahoga App. No. 88368, 2007-Ohio-638, at ¶ 17-18, the court held:
 The requirement of timely filing a motion for relief ensures finality in all cases. * * * Civ.R. 60(B) sets forth a two-part standard for the timely filing of a motion for relief from judgment: "within a reasonable time, and * * * not more than one year after the judgment." While the movant may have up to one year from the date of the judgment to file a motion to vacate, the movant is also bound by the "reasonable time" provision. * * * Accordingly, a motion may be filed within one year under Civil Rule 60(B) but still may not be considered within a "reasonable time." * * * In fact, this Court has consistently found that delays of four months or less are unreasonable under Civ.R. 60(B). * * *
 It is the movant's burden of proof to present factual material that on its face establishes the timeliness or justifies delays in filing a motion to vacate. * * * In order to sustain this burden, the movant must present allegations of operative facts to demonstrate that he is filing his motion within a reasonable period of time. * * * In the absence of any explanation for the delay in filing the Civ.R. 60(B) motion, the movant has failed to meet his burden of establishing timeliness of his motion, and the motion to vacate should be denied. * * * *Page 24 
 {¶ 55} Appellant argued in its motion that the newly discovered evidence included a judgment by a state court in Indiana from March 2005 against Alanar, Inc. ("Alanar"), an entity associated with First Financial, for selling unregistered church bonds, as well as a complaint filed by the United States Securities and Exchange Commission ("SEC"), on July 26, 2005, against First Financial, as paying agent of Alanar, in an action for fraud in the issuance of bonds. Appellant further asserted in its motion that Alanar "has a history of selling unregistered church bonds — in July of 2002, the Indiana Securities Division fined Alanar $24,050.00 in civil penalties for selling 66 unregistered church bonds, * * * and, in January of 2002, the Indiana Securities Division fined Alanar $10,500.00 for selling other unregistered securities."
 {¶ 56} The trial court found that appellant had made no attempt to explain the delay of over six months between the time the SEC action was filed and the time appellant filed its motion to vacate. The trial court also found that appellant failed to show how such delay was reasonable, holding that "[t]he mere statement that a motion is filed less than one-year after judgment is insufficient to explain how the delay is `reasonable.'"
 {¶ 57} As noted, the trial court's decision granting summary judgment in favor of First Financial was journalized by judgment entry filed February 16, 2005, while the motion to vacate was filed on February 16, 2006. Thus, the motion was made one day short of a year after entry of summary judgment. Upon review of the motion to vacate, we agree with the court that appellant offered no explanation as to why it waited until the eve of the one-year time period, except for its general assertion that the motion "is being filed within a year of the entry of judgment." Such assertion, however, as found by the trial court, was insufficient to explain how the delay was "reasonable." Busselle v. Redden's *Page 25 Auto Body Garage, Cuyahoga App. No. 85824, 2005-Ohio-4011, at ¶ 11
(appellant, who waited one year before filing Civ.R. 60(B) motion, "in which she argued that the motion was filed within a reasonable time because it was within a year from the date of judgment," provided insufficient reason to justify delay). Thus, the trial court did not abuse its discretion in finding that appellant had failed to sustain its burden of demonstrating that the motion to vacate was filed within a reasonable time.
 {¶ 58} The trial court further found that appellant had not demonstrated entitlement to relief under Civ.R. 60(B)(2), which permits relief from judgment on the ground of "newly discovered evidence." Specifically, the trial court, noting the March 2005 date of the decision in the Indiana case, found that "[t]his case should have been discovered and brought to the Magistrate's attention at the May 2005 hearing," and that the SEC action "was filed over six months ago and should have been brought to this Court's attention sooner." Again, we find no abuse of discretion by the trial court. See Mattingly v.Deveaux, Franklin App. No. 03AP-793, 2004-Ohio-2506, at ¶ 11 (allegedly newly discovered evidence from a separate lawsuit was not newly discovered under Civ.R. 60(B)(2) because it was either known to appellant at time of original hearing, or would have been discoverable with due diligence).
 {¶ 59} The trial court also found, even assuming the evidence to be newly discovered, that it would not have affected the outcome as the court had previously rejected the contention that bonds were unenforceable for lack of registration. In this regard, in order to succeed on a Civ.R. 60(B)(2) motion, the moving party must show not only that the evidence was "newly discovered" and that the movant exercised "due diligence," but the movant must also demonstrate to the trial court how this evidence is *Page 26 
"material," and that it would probably have produced "a different result." Holden v. Ohio Bur. of Motor Vehicles (1990),67 Ohio App.3d 531, 540. Appellant attempted, through citation to the prior out-of-state proceedings, to raise the inference that any bad acts in those proceedings were material to the present case. However, appellant's conclusory statement, in its motion to vacate, that the church bond issuances involved in the Indiana action and SEC filing "likely" involve bondholders in the instant action is insufficient to meet its burden in showing that this evidence would have resulted in a different outcome. Moreover, the allegations in the SEC action involved misused funds intended for the repayment of bondholders.
 {¶ 60} The trial court also addressed appellant's contention that it was entitled to relief under Civ.R. 60(B)(3) on the ground of fraud. The trial court found that appellant's continued claims of fraud did not meet the requirements under Civ.R. 60(B)(3). Further, the trial court noted that both the Indiana court case and the SEC action involved allegations of fraud by bondholders, i.e., individuals entitled to receive payment from the bond issuers, as opposed to a claim of fraud by an issuer. In this respect, the court held in part:
 * * * Defendant borrowed money and has defaulted on its obligation to pay that money back. Who that money is ultimately paid back to does not relieve Defendant of its obligation to pay it back. To rule that it did would only compound the very fraud allegedly perpetrated by Plaintiff in the SEC action. It would allow Defendant to circumvent its obligation to pay at the cost of the bondholders, the very * * * ones allegedly defrauded in the SEC action. Not only would these bondholders not be able to collect from Plaintiff, they would not be able to collect from the people that the money actually went to. * * * *Page 27 
 {¶ 61} We find no abuse of discretion by the trial court. Here, the court recognized that the type of fraud or misconduct contemplated by Civ.R. 60(B)(3) "is fraud or misconduct involved in obtaining the judgment, not fraud or misconduct that would have amounted to a claim or defense in the case itself[.]" First Merit Bank v. Crouse, Lorain App. No. 06CA008946, 2007-Ohio-2440, at ¶ 32. Nor do we find any abuse of discretion by the trial court in finding that appellant's motion to vacate failed to specifically demonstrate why it was entitled to relief on "other grounds" under Civ.R. 60(B)(5). See LaSalle Natl. Bank v.Mesas, Lorain App. No. 02CA008028, 2002-Ohio-6117, at ¶ 18 (where appellant failed to make alleged specific reasons justifying relief but simply appeared to rely on allegations made pursuant to Civ.R. 60(B)(1) and (3), trial court did not err in denying motion for relief from judgment).
 {¶ 62} Based upon the foregoing, appellant's first, second, third, fourth, fifth, and sixth assignments of error are without merit and are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
SADLER, P.J., and WHITESIDE, J., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1