DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court following the August 24, 2004 judgment entry of the Lucas County Court of Common Pleas granting summary judgment in favor of appellee, People's Jewelry Company. Because we find that genuine issues of fact remain, we reverse the trial court's judgment.
 {¶ 2} The relevant facts of this case are as follows. On October 17, 2002, appellants, Shimon Perlmutter and Helen Perlmutter, filed a complaint against appellee, People's Jewelry Company, alleging breach of a contract to pay deferred compensation, medical benefits, and an annual cash payment in lieu of life insurance premiums which commenced upon Shimon Perlmutter's 1988 retirement as president of the company. Appellants filed an amended verified complaint on December 2, 2002. Appellee filed an answer and a counterclaim alleging negligence, breach of fiduciary duty, unjust enrichment, self-dealing and/or conversion.
 {¶ 3} On May 4, 2004, appellee filed a motion for summary judgment arguing that based upon a recently discovered provision in the contract, appellants were actually overpaid deferred compensation and, thus, they were not entitled to any additional monies. Appellee further argued that nothing was owed to appellants because, pursuant to the contract, all the benefits (deferred compensation, medical insurance, and life insurance) terminated 15 years after the date of Mr. Perlmutter's retirement, or September 2003.
 {¶ 4} In their memorandum in opposition, appellants argued that because the provision reducing Mr. Perlmutter's deferred compensation was never applied, its application was barred by the doctrines of estoppel, waiver, and laches. In its reply, appellee stressed that appellants did not deny that the contract contains a provision that terminates all benefits after 15 years, and that the contract contained a provision that reduces deferred compensation if the new president's compensation fall below the pre-retirement compensation of Mr. Perlmutter.[1]
 {¶ 5} On August 24, 2004, the trial court granted appellee's motion for summary judgment. The court agreed with appellee's argument that the "contract clearly and unequivocally" provided that all benefits terminated "the earlier of [15] years from retirement or death" and that the provision in the contract should have been applied to reduce appellants' deferred compensation. The court rejected the application of waiver, estoppel, or laches. This appeal followed.
 {¶ 6} On appeal, appellants raise four assignments of error:
 {¶ 7} "1. The trial court erred when it granted the motion of defendant People's Jewelry Company for Summary Judgment.
 {¶ 8} "2. The trial court erred as a matter of law when it granted defendant People's Jewelry Company an offset for voluntary overpayments made as a result of a mistake of law.
 {¶ 9} "3. The trial court erred as a matter of law when it construed the parties' agreement as imposing a fifteen-year limitation on People's obligation to provide medical and life insurance benefits.
 {¶ 10} "4. The trial court erred as a matter of law when it granted summary judgment in favor of People's when the undisputed evidence establishes that People's failed to pay eighteen months of deferred compensation."
 {¶ 11} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs.
(1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294,1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 12} Prior to discussing appellants' assignments of error, we must set forth the specific portions of the "Agreement" and its amendments that are at issue. The original agreement was executed on August 16, 1974, and provides, in part:
 {¶ 13} "1. Definitions — For purposes of construing the provisions of this Agreement, the following words and/or phrases shall have the following meaning:
 {¶ 14} "(a) * * *
 {¶ 15} "(b) `Regular Retirement Benefits' — Regular retirement benefits, payable hereunder, shall be an amount equal to Fifty (50%) percent of Employee's regular base compensation which is being paid to him in the year in which he has regularly retired. * * *.
 {¶ 16} "* * *.
 {¶ 17} "(iv) If, subsequent to the Employee's effective date of retirement, the base compensation of Employer's President is reduced below the amount of such compensation being paid to said President on the effective date of the Employee's retirement, regular retirement benefits shall be reduced by an amount which is equal to said regular retirement benefits on the effective date of the retirement multiplied by that fraction, the numerator of which is the President's base compensation (as reduced) and the denominator of which is the President's base compensation as of the effective date of the Employee's retirement. * * *.
 {¶ 18} "* * *.
 {¶ 19} "2. Regular Retirement — Upon the regular retirement of Employee, as hereinbefore provided, Employer shall pay to Employee `regular retirement benefits', in semi-monthly installments, the first of which shall be payable on the 16th day following the effective date of regular retirement and which shall continue to be paid on the first day and the 15th day of each month, thereafter, for fifteen (15) years or until Employee dies, whichever occurs first. * * *. "
 {¶ 20} The agreement was first amended in 1980; these amendments are not at issue in the present case. In August 1981, the agreement was amended to provide for medical insurance; in 1985, the provision was again modified and provides:
 {¶ 21} "4.A Medical Insurance — Subsequent to Employee's retirement, hereunder, whether regular, early or by reason of disability, Employer shall continue to provide Employee and his spouse, if any, with the same medical insurance coverage as was being provided to him at the time of such retirement. Further, such coverage shall be provided to Employee's surviving spouse, no matter when Employee should die, whether prior to of after retirement."
 {¶ 22} The 1985 amendment also provided for life insurance as follows:
 {¶ 23} "4.B — Life Insurance — Subsequent to Employee's retirement hereunder, whether regular, early or by reason of disability, Employer shall continue to pay the cost of all policies ensuring Employee's life which are under so-called `split-dollar arrangements' providing that Employer shall receive, upon Employee's death, an amount equal to the policies' cash surrender value. Provided, however, that Employer shall not be required to spend more than Seven Thousand Five Hundred ($7,500) Dollars per year for this coverage. * * *."
 {¶ 24} On July 11, 1991, provision 4.B was amended to include the following sentence: "Further, Employee may, at any time, elect to receive a cash payment of Seven Thousand Five Hundred ($7,500) Dollars per year in lieu of continuation of the aforesaid life insurance policies."
 {¶ 25} On January 30, 2002, in a document captioned "Temporary Waiver of Benefits," the parties agreed to a 6 month, 50 percent reduction in appellants' benefits due to appellee's financial difficulties. According to the document, the reduction, commencing February 1, 2002, was to be considered a deferral, not a waiver, of appellants' deferred compensation benefits which were scheduled to be paid through September, 2003. The document provided that all payments would resume on August 1, 2002, and that the unpaid deferred compensation benefits would be repaid beginning October 1, 2003. According to appellants, after the temporary waiver expired, the payments never resumed.
 {¶ 26} For ease of discussion, we will address appellants' assignments of error out of order. Appellants' second and fourth assignments of error dispute the trial court's determination that appellants were not entitled to the deferred compensation that remained unpaid, following the temporary waiver, based on the court's conclusion that the doctrines of estoppel, waiver, and laches did not apply to the parties' failure to apply the provision in the agreement reducing the deferred compensation payments. The court, by implication, offset the overpayment against the unpaid deferred compensation.
 {¶ 27} The parties do not dispute that at the time of Mr. Perlmutter's September 16, 1988 retirement his annual salary, as president of People's, was $75,900; the successor president's salary was $55,000. Thus, under the provision set forth above, Mr. Perlmutter's deferred compensation should have been $55,000/$75,900 of his base retirement, base retirement being 50 percent of his 1988 base compensation. The president's compensation was later incrementally increased but never rose above the amount paid to Mr. Perlmutter at the time of his retirement. According to appellee, and not disputed by appellants, the failure to apply the formula resulted in an overpayment of deferred compensation in the amount of $151,459.
 {¶ 28} Appellants argued in the trial court that the principles of waiver, estoppel, and laches prevented appellees from applying the formula to offset any amount owed. On appeal, appellants argue that appellee's failure to apply the provision was a mistake of law and, under the principles of law related thereto, appellee was not entitled to use the amount of the overpayment as an offset. Appellee argues that because appellants did not raise the mistake of law argument in the trial court, the argument is not properly before this court.
 {¶ 29} We acknowledge that, after a review of the record, appellants failed to raise the mistake of law argument in the court below. Arguments that parties raise for the first time on appeal will not be considered by an appellate court. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, 81. Despite the fact that appellate courts review summary judgment decisions de novo, "`the parties are not given a second chance to raise arguments that they should have raised below.'" Aubin v.Metzger, 3d Dist. No. 10-3-08, 2003-Ohio-5130, at ¶ 10, quoting Smithv. Capriolo (Apr. 11, 2001), 9th Dist. No. 19993. Thus, we will not address appellants' mistake of law argument.
 {¶ 30} We agree with the trial court's conclusion that in this case there was no evidence that appellee misled appellants which is required for an implied waiver or for estoppel. See McMillen v. Willys SalesCorp. (1962), 118 Ohio App. 20. Further, laches is an equitable doctrine and is defined as "`an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" Connin v. Bailey (1984),15 Ohio St.3d 34, 35, quoting Smith v. Smith (1957), 107 Ohio App. 440,443-444. In order to successfully invoke the doctrine a party must demonstrate an unreasonable delay in asserting a right, absence of an excuse for the delay, knowledge, actual or constructive, of the injury or wrong, and prejudice to the other party. State ex rel. Meyers v.Columbus (1995), 71 Ohio St.3d 603, 605. Material prejudice will not be inferred from a mere lapse of time. State ex rel. Caspar v. Dayton
(1990), 53 Ohio St.3d 16, 20. In this case, appellants have not demonstrated that they were prejudiced by appellee's failure to apply the formula; appellants were overpaid. Accordingly, we find appellants' second and fourth assignments of error not well-taken.
 {¶ 31} In appellants' third assignment of error, they contend that the trial court erred when it construed the parties' agreement as imposing a 15 year limitation on medical benefits and life insurance. Appellee counters that in the trial court, appellants conceded that all benefits terminated after 15 years; thus, appellants may not pursue this argument on appeal.
 {¶ 32} Reviewing the arguments made before the trial court, it is apparent that the arguments revolved around the unpaid deferred compensation benefits and the provision in the agreement which, had it been applied, would have reduced Mr. Perlmutter's monthly deferred compensation payments. We agree that the only alleged "concession" regarding the agreement appeared in appellants' memorandum opposing summary judgment and provided: "Plaintiffs do not dispute the general contractual principles set out in Defendant's motion." This statement was made concerning the application of the provision reducing Mr. Perlmutter's deferred compensation benefits; it is definitely a stretch to say that this statement in any way concedes the application of the 15 year limitation to all benefits. In fact, in the same memorandum, appellants state that the monthly cash benefits paid in lieu of life insurance premiums "were supposed to continue until Perlmutter's death;" and that appellants "would continue to have access to medical coverage equivalent to that which was provided at the time of his retirement and at no additional out of pocket cost to them."[2] Based on our finding that appellants did not concede that the limitation period applied to medical benefits and life insurance, and our belief that the trial court's finding that the limitations period applied to all benefits was based on its interpretation of the agreement, we will address appellants' argument.
 {¶ 33} In an action based on contract, traditional concepts of contract interpretation apply and control our consideration of this case. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties."Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth. (1997), 78 Ohio St.3d 353, 361, 1997-Ohio-202, citing AultmanHosp. Assn v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. "`The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Id., quoting Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. It is a tenant of contract interpretation that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 34} As set forth above, the original agreement, executed in 1974, provided for "regular retirement benefits" which were defined in section 1.(b) as benefits in "an amount equal to Fifty (50%) percent of Employee's regular base compensation. * * *." Section 2. states that the "regular retirement benefits" "shall continue to be paid on the first day and the 15th day of each month, thereafter, for fifteen (15) years or until Employee dies, * * *."
 {¶ 35} Medical insurance benefits were added in the 1981 amendment. The amendment added paragraph 4.A which provided that the "Employer shall continue to provide Employee and his spouse, if any, with the same medical insurance coverage as provided to Employer's President." The paragraph further stated that the coverage would be provided to the employee's widow, regardless of whether the employee died before or after retirement.
 {¶ 36} The life insurance provision, added in 1985 as paragraph 4.B, provided that the employer, upon the employee's death, would receive "an amount equal to the policies' cash surrender value." In 1991, the provision was amended to provide that the employee may, "at any time, elect to receive a cash payment of Seven Thousand Five Hundred ($7,500) Dollars per year in lieu of continuation of the aforesaid life insurance policies."
 {¶ 37} Finally, the "Temporary Waiver of Benefits," as agreed to by the parties, provided that "the Deferred Compensation payment listed above is scheduled to be paid through September, 2003." The temporary waiver further stated that the payments would resume at their present level on August 1, 2002, or six months following the reductions. Deferred compensation was listed separately as a deferral, not a waiver, to be repaid beginning October 2003, the first month after its termination.
 {¶ 38} In its August 24, 2004 decision, the trial court held that "the contract clearly and unequivocally provides that all benefits shall cease on the earlier of fifteen years from retirement or death." We disagree. It is clear that the deferred compensation benefits, in the 1974 agreement referred to as "regular retirement benefits," terminated after the earlier of 15 years, or Mr. Perlmutter's death. However, given the language of the agreement, we find that a factual issue exists as to whether appellee breached the agreement by terminating appellants' medical and life insurance benefits following the execution of the "Temporary Waiver of Benefits." Appellants' third assignment of error is well-taken.
 {¶ 39} Based on out disposition of appellants' third assignment of error, we find that appellants' first assignment of error, alleging that the trial court erroneously granted summary judgment, is well-taken.
 {¶ 40} On consideration whereof, we find that substantial justice has not been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is reversed and the case is remanded for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Parish, J., Concur.
[1] Nearly a month after appellee filed its reply, and just days before the court entered its judgment, appellants, without leave of court, filed what they captioned: "Plaintiffs' Response to Reply Memorandum." In their response, appellants vehemently argued that they did not concede that the medical and life insurance benefits terminated 15 years after retirement. The Ohio Rules of Civil Procedure have no provision for filing a surreply to a motion for summary judgment. Further, there is no indication that the court considered the surreply in rendering its decision.
[2] Further, in appellee's March 4, 2003 amended counterclaim, appellee alleged that Mr. Perlmutter created a compensation package that, inter alia, provided "[l]ife insurance for life and/or $7500.00 per year for life; * * *."