[Cite as *Hill v. At Home Stores, L.L.C.*, 2023-Ohio-2798.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Geraldine Hill, et al. | Court of Appeals No.  L-22-1282 |
| Appellants | Trial Court No.  CI0202003750 |
| v. | |
| At Home Stores, LLC, et al. | **DECISION AND JUDGMENT** |
| Appellee | Decided:  August 11, 2023 |

* * * * *

Jeffrey W. Swiech and Andrew J. Nash, for appellant,
Geraldine Hill.

Maia E. Jerin, Chloe C. Deangelis, and Sheila A. McKeon,
for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} In this premises liability action, the plaintiff-appellant, Geraldine Hill,

appeals a November 1, 2022 judgment of the Lucas County Court of Common Pleas,

which granted summary judgment in favor of the defendant-appellee, At Home Stores.

As set forth below, we affirm.

## 1. Background and Facts

{¶ 2} This case arises from an injury sustained by Hill on March 17, 2020 while shopping at At Home, a home furnishing store, located on Reynolds Road, in Toledo.

{¶ 3} According to the complaint, Hill was injured while "looking at the price of corner shelving units that were positioned on a rack." Hill claims that the corner shelving units ("corner stands") were "improperly positioned and unsecured on a rack, making them susceptible to falling over and/or the shelves falling off, onto and/or into the surrounding area." Hill claims that, while "inspecting" a corner stand to determine its price, it "suddenly and unexpectedly gave way, falling onto [her], and causing [her] to fall * * * on her face." And, as a result of the unit falling, "some or all" of the other units also fell, "striking [Hill] as she landed." Hill alleges "severe and permanent injuries" to her "head, back, neck, and spine."

{¶ 4} In the complaint, Hill claimed that At Home violated its duty to exercise reasonable care (Count 1) and to "avoid active negligence" (Count 2). In Count 3, Teran Hill, Hill's husband who is also a party to this case, raised a loss of consortium claim.

{¶ 5} The record includes deposition testimony from Hill and from Richard King, the store manager. A summary of their testimony is set forth below.

{¶ 6} Hill testified that, although she was not a regular customer of At Home, she visited the store the day before her injury and purchased two pedestals and some glass shelving. She returned the next day, March 17, 2020, around noon, for a corner stand and

2.

another pedestal.  Hill found the corner stands "[i]n the back of the store" by "just brows[ing] around."

{¶ 7} As the name suggests, corner stands are designed to fit into a corner. According to Hill, the corner stands she was shopping for are made of metal and is about four feet high and weighs less than 30 pounds.  The stands were displayed on a store shelf that was raised about four inches from the floor.

{¶ 8} Hill testified that the injury occurred when she "lean[ed] in" and "reached around to try to see the price of [the stand and] they collapsed, and [she] collapsed with them."  In all, about six stands fell.  After the incident, Hill "got up, stretched [and] [sat] the stands back up."  Hill put two stands in her cart for purchase and proceeded to the check-out counter.  Along the way, she added a piece of glass for her pedestal table.  At check out, Hill told the cashier what had occurred and asked for assistance getting the items in her car "because [she] fell."  The cashier called for assistance, and a person, whom Hill later learned was the store manager, helped Hill carry the items out and place them in her car.  Hill does not recall whether she told the manager about the incident.

{¶ 9} Once home, Hill texted her husband, Taren, who was at work.  Later that day, about 3 p.m., Hill and Taren returned to the store.  Their purpose in returning was two-fold.  In her words, Hill wanted "to exchange the pedestal [that she had purchased the day before] and [to] speak to a manager about [her] fall."   Hill met with the manager, Richard King, who prepared a "Customer Incident" report as the two spoke.  After their

3.

conversation, Hill returned to the area where she had fallen and took some pictures of the corner stands. According to the deposition transcript, some or all of the pictures were made available to defense counsel during Hill's deposition, but they were not marked for identification. And, with the exception of one picture that was pasted into At Home's motion for summary judgment, none were made a part of the record. Likewise, the Customer Incident report is not part of the record.

{¶ 10} Two days after her fall, Hill saw her doctor, complaining of knee and back pain. Following an MRI, Hill underwent a spinal fusion, which Hill alleges was necessitated as a result of injuries she sustained when she fell.

{¶ 11} During his deposition, Store Manager Richard King referred to the items at issue as "baker's racks." King said that the metal racks vary in size, between two to six feet and weigh "less than ten pounds" and "absolutely" less than 25 or 30 pounds. He added that the baker's racks are "foldable," which allow them to lay flat, for ease when packaging and transporting them. When the baker's racks arrive at the store, they are packaged, in a collapsed state, with the shelves "folded in," and an employee is tasked with unpacking them, opening them up and placing them in the display area. According to King, the baker's racks were displayed that way for as long as he has worked at that store, since 2018. King testified that there are no instructions regarding how to display them.

4.

{¶ 12} According to King, when Hill returned to the store to report the incident, she told him that "she was looking at * * * bakers' racks, and they had fallen over. She fell on top of them, hurting her knees and her back." But, Hill did not describe how the baker's racks "came to f[a]ll." Later, King inspected the area where the racks were displayed. He testified that he "found nothing. Everything was in a place where [he] would assume it's supposed to be. * * * [The baker's racks] were all folded out [and in] proper position."

{¶ 13} At Home moved for summary judgment as to all claims asserted against it. It argued that there was no evidence that "the display" was defective or hazardous and that, even if there was, the display was open and obvious, obviating any duty by At Home to warn Hill. And, because Teran's loss of consortium claim was derivative of Hill's negligence claims, At Home argued that it was entitled to judgment as to that claim as well. Hill opposed the motion. She argued that the hazardous condition was the "unstable nature and improper construction of the shelves which caused them to fall when [she] looked at the price tag." She claimed that she presented evidence establishing an issue of fact regarding whether the hazardous condition was open and obvious and whether At Home breached its duty to warn her. After At Home filed a reply, Hill filed a motion for leave, seeking permission to file a surreply and an affidavit in support.

{¶ 14} By judgment dated November 1, 2022, the trial court denied Hill's motion for leave to file a surreply. It further granted At Home's motion for summary judgment,

5.

dismissing all claims against the company.  Hill appealed and assigns two errors for our review[1]:

> I.  The trial court erred when it denied Appellant's Motion for Leave to File Surreply.

> II. The trial court erred where it granted summary judgment in favor of Appellee At Home Stores, LLC.

### 2.  Hill's motion for leave to file a surreply.

{¶ 15} In her first assignment of error, Hill argues that the trial court erred in denying her request to file a surreply.

{¶ 16} The Ohio Rules of Civil Procedure contain no provision for filing a surreply to a motion for summary judgment.  *Perlmutter v. People's Jewelry Co.,* 6th Dist. Lucas No. L-04-1271, 2005-Ohio-5031, ¶ 4, fn. 1.  Accordingly, it is within the discretion of the trial court as to whether to grant such a motion.  *First Fin. Servs., Inc. v. Cross Tabernacle Deliverance Church, Inc.,* 10th Dist. Franklin No. 06AP-404, 2007-Ohio-4274, ¶ 38-39 citing *Perlmutter.*  An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17} To determine whether the trial court abused its discretion in denying Hill leave to file a surreply, we first consider the filings that preceded it.

---

[1] Teran Hill did not appeal the dismissal of his loss of consortium claim.

{¶ 18} In its motion for summary judgment, At Home argued that Hill failed to present evidence that "there was anything wrong with or defective with the display" and, even if there was, the "shelving unit display" was "readily observable" and therefore "open and obvious," obviating any duty by At Home to warn Hill.

{¶ 19} In her objection, Hill argued that At Home had "misidentified" the hazardous condition. She defined the hazardous condition as "unstable and improperly constructed corner stands." Specifically, Hill claimed that the corner stands "were not properly assembled as they were not *locked into place*." (Hill's Memo in Opp. At 4; emphasis added).

{¶ 20} In its reply, At Home queried, "[l]ocked in place to what? To the shelving unit on which they were displayed? Plaintiff seems to be arguing * * * that the shelves should have been locked to or somehow secured to the [display shelf]."

{¶ 21} In her motion for leave, Hill complained that At Home had "distorted and misunderstood" the factual basis for her claim. She insisted that she was *not* claiming that "the corner stand" was hazardous because it was not secured to the four-inch shelf on which it was displayed but rather because it "was not correctly assembled." Hill requested "the opportunity to clarify the record." Attached to her motion was the proffered reply and pictures of corner stands. Separately, Hill also filed an affidavit (her own).

7.

{¶ 22} In denying leave, the trial court found that Hill's proffered motion was "improper" (because it contained "additional evidence and additional arguments") and unnecessary (because At Home "did not bring forward new arguments or evidence in their reply"). On appeal, Hill challenges the trial court's finding that Home did not raise a "new argument" in its reply.

{¶ 23} Based upon our review of the reply brief, we agree with the trial court that At Home did not raise new arguments. Rather, it reiterated its summary judgment arguments and responded to the arguments Hill made in her opposition to summary judgment. We also reviewed Hill's motion for leave and supporting materials. We find that the trial court could have reasonably concluded that the proposed filings did not add anything new, nor did they include matters that could not have been raised in its initial response to the motion for summary judgment. Importantly, while At Home may not have understood the gist of Hill's claim, it is clear that the trial court did. That is, the trial court credited Hill as having alleged that the corner shelves were "not 'properly locked in' or secured and [that] they were not properly constructed," which is exactly how Hill described the hazard. (J.E. at 7; emphasis added.) In other words, any misstatement by At Home in its description of Hill's claim had no bearing on the trial court and therefore is irrelevant.

{¶ 24} It was within the discretion of the trial court whether to grant Hill's motion for leave to file a surreply. *First Fin. Servs., Inc.* 10th Dist. Franklin No. 06AP-404,

8.

2007-Ohio-4274, at ¶ 38-39 citing *Morris-Walden v. Moore,* 8th Dist. Cuyahoga No. 87989, 2007-Ohio-262, ¶ 27.  Having found no evidence that the trial court abused its discretion in denying the motion for leave, we find Hill's first assignment of error not well-taken.

### 3.  At Home's motion for summary judgment

{¶ 25} Appellate review of a trial court's decision to grant summary judgment is de novo.  *Chalmers v. HCR ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 21; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.  Pursuant to Civ.R. 56(C),

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is

made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

*Id.; See also Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 26} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that affirmatively demonstrate the absence of a genuine issue of material fact—not the reliance on conclusory assertions that non-movant has no evidence to prove its case— regarding an essential element of the non-movant's case. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 6th Dist. Sandusky No. S-16-041, 2017-Ohio-4467, ¶ 14. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E). *Id.* A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Id.*

***A. The evidence in this case***.

{¶ 27} Before addressing the propriety of summary judgment, we first discuss the evidence that was properly before the trial court.

{¶ 28} In her brief, Hill refers to her affidavit and to pictures, both of which were filed in support of her motion for leave to file a surreply. However, in its final judgment,

the trial court specified that "no information or argument" proffered by Hill in her surreply would be "considered."  Having affirmed that decision today, we too must disregard any allegations of fact, or arguments derived therefrom, set forth in Hill's affidavit, as well as the pictures filed at that time.  *See, e.g., Caravella v. West-WHI Columbus Northwest Partners,* 10th Dist. Franklin No. 05AP-499, 2005-Ohio-6762, ¶ 11. ("Because we apply the same standard as the trial court, we may consider only the evidence before the trial court, pursuant to Civ.R. 56(C).").

{¶ 29} Likewise, multiple versions of Hill's appellate brief—which had to be amended, twice—refer to "video surveillance footage of the incident."  Hill characterizes the surveillance video as "evidence presented."  In response, At Home moved this court to strike any reference to the video, asserting that it was never filed in the trial court and therefore could not be considered on appeal.  We remanded the issue back to the trial court, and pursuant to our order, the trial court found that "[t]he video was not considered by this Court when rendering its decision on summary judgment and was not part of the record." (*See* April 5, 2023 Decision and Judgment Entry Regarding Remand). Accordingly, we granted At Home's motion to strike and indicated that we would "disregard any reference to the video surveillance and [that] it [would] not be considered by the court in reaching any decision." (April 18, 2023 Decision and Judgment).  Hill's continual reference to the surveillance video and description of it as "evidence

presented," as recently as May 10, 2023, is improper. *See, e.g.,* Appellant's May 10, 2023 Second Amended Brief at 2.

{¶ 30} In sum, because we apply the same standard as the trial court, we may consider only the evidence properly before it. Here, that evidence includes the pleadings and the deposition transcripts of Hill and King. It does not include Hill's affidavit, photographs attached to her motion for leave, or video surveillance footage.

### B. Negligence

{¶ 31} A successful negligence action requires a plaintiff to establish all of the following: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984). If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements and if the plaintiff fails to respond as Civ.R. 56 provides, the defendant is entitled to judgment as a matter of law. *Ray v. Wal-Mart Stores, Inc.,* 4th Dist. Washington No. 12CA21, 2013-Ohio-2684, ¶ 14-15.

#### i. Duty

{¶ 32} In a premises liability case, the duty that an owner or occupier of premises owes to one who is injured on those premises is governed by the relationship between the parties. *Light v. Ohio University*, 28 Ohio St.3d 66, 67, 502 N.E.2d 611 (1986). "That relationship will fall into one of three categories: invitee, licensee, or trespasser." *Turner*

12.

*v. Cathedral Ministries*, 6th Dist. Sandusky No. S-14-020, 2015-Ohio-633, ¶ 10 (6th Dist.). A business invitee is an individual who is "rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest." (Citation omitted.) *Clark v. BP Oil*, 6th Dist. Lucas No. L-04-1218, 2005-Ohio-1383, ¶ 10. "A business owner ordinarily owes its invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Id.* In this case, the parties agree that Hill was a business invitee of At Home's.

{¶ 33} A premises owner is not an insurer of a business invitee's safety and is under no duty to protect a business invitee from dangers known to the invitee "'or are so obvious and apparent to such invitee that [she] may reasonably be expected to discover [the dangers] and protect [herself] against them.'" *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204, 480 N.E.2d 474 (1985), quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus.

{¶ 34} The open-and-obvious doctrine concerns the first element of a negligence claim, namely, whether a duty exists. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5, 8. If the doctrine applies, it "obviates the duty to warn and acts as a complete bar to any negligence claims." *Id.* "A hazard is considered to be open and obvious when it is in plain view and readily discoverable upon ordinary

13.

inspection." *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 6th Dist. Lucas No. L-08-1187, 2009-Ohio-6677, ¶ 68.

{¶ 35} Whether or not a duty exists is a question of law for the court. *Id.* There is no formula for whether a duty exists as a matter of law. *Id.* Appellate review of a question of law is de novo. *Sanborn v. Hamilton Cty. Budget Comm.*, 142 Ohio St.3d 20, 2014-Ohio-5218, 27 N.E.3d 498, ¶ 3.

{¶ 36} Here, Hill describes the hazardous condition as "improperly and negligently constructed corner shelves," specifically shelves that were not locked "into place, i.e. with the corresponding pins placed into holes." Hill further argues that, while the corner stands and the attached shelves may have been open and obvious, the fact that the shelves were unlocked (and therefore hazardous) was not. Hill insists that she "had no reason to believe that the corner stands were not properly constructed when she encountered them [and fell]."

{¶ 37} We first review the evidence regarding the purported hazard and the precise allegations in this case. During her deposition, the following exchange took place,

Q. So what did you do when you went down the aisle and saw the *
* * corner stands on the bottom shelf?

A. I reached around to try to see the price of it, and they collapsed,
and I collapsed with them. * * *

Q. Okay. So you said you reached * * * reached in to do what, to turn the shelving unit around so you could see the price tag?

A No, I reached in there * * * to grab the price tag, to see the price, and it collapsed.

Q. Okay. What collapsed?

A. The stand.

Q. The whole shelving unit?

A. The stands, all of the stands fell that was on that shelf.

Q. How did they fall?

A. They fell—when I leaned in—they just fell. They wasn't correctly – *I don't guess they was correctly locked in*. They was just standing there. It wasn't secure.

Q. * * * Did you knock them over?

A. No.

Q. Well how did they collapse?

A. When I * * * reached in and touched the stand [and] grabbed the tag, it fell.

Q. The unit fell?

A. Yeah, the stand fell.

Q. Okay. And did it knock the rest of the stands off the shelf?

A. Knocked them over.

* * *

Q. Did you by any chance take a picture of this?

A. Yes, I got a picture of it.

Q. * * * So did some of these corner units fall into the aisle where you were standing? * * *

A. No, they fell forward.  I was behind it.

* * *

Q. * * * How did you get hurt, then?

A. Because when they fell, I collapsed with them, and I fell on top of them.  * * * I fell over on top of the stands.

* * *

Q. Ms. Hill, I looked at two photographs your lawyer sent.  You took those photos?

A. Yes. * * * When I went back to the store that same day.

* * *

Q. I certainly have a better understanding now of what this looked like.  So you were bending over and leaning in to look at the price tag?

A. I wasn't bending over.  I was leaning in.

* * *

Q. What did you do then, after you fell?

A. I got up, stretched, and I * * * [sat] the stands back up.

Q. How many stands did you have to pick up and stand up straight?

A. It was about six.  (Emphasis added; Hill Depo. at 32- 45).

{¶ 38} About three hours later, Hill returned to the store and reported the incident to Manager King who prepared the Incident Report.  During her deposition, Hill could not recall anything specific about that discussion.  When their conversation ended, Hill returned to the area of the store where the corner stands were located and took the pictures that were referenced during her deposition.  One of those pictures was pasted into At Home's motion for summary judgment.  It shows five or six corner stands, assembled and displayed on the four-inch shelf.

{¶ 39} Upon review, it is unclear to this court whether Hill is alleging that the shelves from *one* stand—the one that she leaned into to check its price—were unlocked or whether she is alleging that the shelves from *multiple* stands or even *all six* of the stands were unlocked.  The picture included in At Home's motion for summary judgment—which shows a number of stands—lacks any details from which one could conclude that any of the shelves, on any particular corner stand, were locked or unlocked.  Likewise, Hill's testimony does not provide any clarity.  She testified that, "[t]hey wasn't correctly—I don't guess they was correctly locked in.  They was just standing there.  It wasn't secure."  Setting aside the uncertainly of her testimony—for the moment—we

17.

also question the underlying premise of her statement, i.e., that the shelves were not "correctly locked in." Indeed, we found *no* evidence to substantiate Hill's claim that shelves were unlocked. Certainly, there is no testimony by Hill to that effect. That is, there is no testimony of Hill claiming to have observed any shelf, on any corner stand, as being unlocked. Again, after Hill fell, she "got up, stretched, and * * * [sat] the stands back up." But, she gave no indication as to whether any, or all, of the shelves from the fallen stands were locked, or unlocked. Likewise, in standing them back up, she gave no indication that she locked the shelves into place or conversely, that she left them unlocked. Finally, when she returned to the store later that day, she photographed the corner stands but offered no testimony as to whether she observed that the stands were locked or unlocked. Thus, even if we credit Hill as having more firmly testified, for example, that "the shelves were not correctly locked in," we would still question the foundation for such an assertion, given the total absence of any evidence on this point. In the absence of any evidence to support her claim that "the shelves" were not correctly "locked in," it would appear that she has failed to offer any facts establishing a hazardous condition.

{¶ 40} However, in light of our findings below, we need not decide whether Hill proffered evidence of a hazardous condition, let alone whether that condition was, or was not, open and obvious. That is, even assuming At Home had a duty to exercise ordinary

18.

care, the company was still entitled to summary judgment because the evidence in this case does noes not establish that it violated that duty.

### ii.    Breach

{¶ 41} To establish that a premises owner failed to exercise ordinary care, the plaintiff must demonstrate *one* of the following three conditions: (1) the premises owner, through its officers or employees, created the hazard; (2) the premises owner possessed actual knowledge of the hazard and failed to give adequate notice of its existence or to remove it promptly; or (3) the hazard existed for a sufficient length of time to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care. *Hefler v. Remke Markets, Inc,* 1st Dist. Hamilton No. C-200364, 2021-Ohio-2694, ¶ 10 citing *Ray,* 4th Dist. Washington No. 12CA21, 2013-Ohio-2684, at ¶ 14-15.

{¶ 42} A business invitee bears the burden to prove that the premises owner breached the standard of care. *Perry v. Evergreen Realty Co.,* 53 Ohio St.2d 51, 52–53, 372 N.E.2d 335 (1978) ("The burden of producing sufficient proof that an owner has failed to take safeguards that a reasonable person would take under the same or similar circumstances falls upon the invitee."). Whether a premises owner breached the standard of care ordinarily is a factual question left to the jury. *Ray* at ¶ 21. "However, where there is no genuine issue of fact for the jury to decide, a court may grant summary

19.

judgment if the moving party is otherwise entitled to judgment as a matter of law." (Quotation omitted.) *Id.*

{¶ 43} In this case, Hill alleges liability under the first prong, i.e. that At Home, through its employees, created the hazard. Specifically, she alleges that, "[o]n this occasion, * * * At Home[] employees had not properly locked the corner shelves into place while constructing them for display." Hill does not attribute her claim—that At Home employees improperly assembled the products—to any record evidence nor does she identify "this occasion." Instead, Hill reasons that because it is "undisputed," that company employees "assembled" the corner stands and "set up the display," then it must follow that it was the employees who "fail[ed] to properly construct them." Hill's argument amounts to supposition, not evidence.

{¶ 44} "An inference of negligence does not arise from mere guess, speculation, or wishful thinking, but rather can arise only upon proof of some fact from which such inference can reasonably be drawn." *Parras v. Std. Oil Co.,* 160 Ohio St. 315, 319, 116 N.E. 2d 300 (1953). Additionally, "Ohio courts have held that a defendant does not have exclusive control over a display of merchandise where members of the public frequent an area and have access to the display." *Ray* at ¶ 60, citing *Carr v. May Dept. Stores Co.* 8th Dist. Cuyahoga No. 77290, 2000 WL 1369902 (Sept. 21, 2000), (Department store did not have exclusive control over a mannequin at the time it fell on the plaintiff where the evidence showed that various third-party vendors as well as members of the public had

20.

access to it); *Kemper v. Builder's Square, Inc.*, 109 Ohio App.3d 127, 138, 671 N.E.2d 1104 (2d Dist.1996) (Home improvement store did not have exclusive control over posts displayed on a self-service shelving unit absent evidence that "no other customers or third parties could have had control over or rearranged the posts from the time the posts left the control of [the defendant] until [the plaintiff] was injured."). *See also Dorsey v. Lowe's Home Centers, LLC,* N.D. Ohio Case No. 1:20-cv-2774, 2023 WL 2456587 (Mar. 10, 2023) (Summary judgment properly granted where plaintiff could point to no evidence "indicating that it was store personnel, rather than another customer, who opened the tile box and left it atop the arranged pallet.").

{¶ 45} In this case, evidence that At Home employees are responsible for unpacking, assembling, and displaying the corner stands does not lead to a reasonable inference that it was an employee, and not some third party, who created the hazardous condition. Hill's own conduct and testimony illustrate how it is just as likely that a previous customer—rather than a store employee—could have unlocked shelves while examining a corner stand for a potential purchase. With no evidence on this point, we find that Hill failed to put forth evidence to create a genuine issue of material fact as to whether At Home employees created the hazard she describes in this case.

{¶ 46} With regard to the second method of demonstrating a beach, Hill does not argue that At Home, or any particular employee, had "actual knowledge of the hazard." But, she does claim that At Home had constructive knowledge of the condition because

its employees perform "sweeps" of the store to assure that it is "free and clear" of hazards and/or because it periodically adds products to the display shelves as items are sold. Therefore, Hill maintains that the company either knew or should have known that the hazard existed.

{¶ 47} To show that a premises owner possessed constructive knowledge of the hazard, "evidence of how long the condition existed is mandatory." *Harrison v. The Andersons, Inc.,* 6th Dist. No. L-99-1368, 2000 WL 819057 (June 23, 2000); accord *Presley v. City of Norwood,* 36 Ohio St.2d 29, 32, 303 N.E.2d 81 (1973) (Evidence regarding the length of time the hazard existed "is necessary to support an inference" that the premises owner had constructive knowledge). Without such evidence, it is impossible to determine whether a premises owner should have discovered the hazard upon a reasonable inspection. *Id.* Thus, if a plaintiff fails to present evidence showing how long the alleged hazard existed, then the plaintiff cannot show that the defendant breached the standard of care. *Sharp v. The Andersons, Inc.,* 10th Dist. Franklin No. 06AP-81, 2006-Ohio-4075, ¶ 13.

{¶ 48} In this case, there is simply no evidence to indicate how long the alleged hazard existed. Indeed, there is no evidence of a prior incident involving falling corner shelves, and King testified that the shelves have been assembled by employees, without incident, since his arrival at the store in 2018. Under these facts, we find that it is not reasonable to conclude that the hazard existed for a sufficient length of time to justify an

inference that the failure to warn against it or to correct it was attributable to a lack of ordinary car. Therefore, Hill cannot show that the At Home breached its duty to warn her under the third method.

{¶ 49} We find that no genuine issue of material fact remains and that, when construing the evidence in a light most favorable to Hill, reasonable minds could only conclude that At Home was entitled to judgment as a matter of law. In particular, we conclude that Hill failed to produce evidence that At Home negligently constructed the corner stands; that one of its employees had actual knowledge of the presence of the hazardous condition and neglected to give adequate notice of it or correct it promptly; or that the danger presented by the unlocked stands had existed for a reasonably sufficient time to justify the inference that the failure to warn against it/them or to remove it/them was attributable to a lack of ordinary care. Accordingly, we find that the trial court did not err in granting At Home summary judgment, and Hill's second assignment of error is not well-taken.

### 4. Conclusion

{¶ 50} Hill's first and second assignments of error are found not well-taken, and the judgment of the Lucas County Court of Common Pleas is affirmed. Hill is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

23.

Geraldine Hill, et al.
v. At Home Stores, LLC, et al.
L-22-1282

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                         _____
                                                  JUDGE

Gene A. Zmuda, J.                          
                                                _____

Charles E. Sulek, J.                       JUDGE
CONCUR.


                                                  _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.